Mr. Merakian, we'll hear from you first. Thank you, your honor. May it please the court, I represent the appellants seeking reversal of the district court's grant of summary judgment of finding qualified immunity and official immunity in my client's federal and common law claims of excessive force and battery. Because these cases are, this court is well familiar with these cases, having decided at least six cases in this excessive force and battery between 2009 and 2019 and a seventh case just very recently. And all these cases are so fact intensive and uniquely determined by their facts, I want to take just a couple of minutes to address what I believe are the facts when viewed in the light most favorable to the appellant, which is what this court will do in ruling on summary judgment matters. Mr. Jacobsen is an auto dealer and he has authority, had authority to be at an auto, a private auto auction by showing his access card, which he did within 15 seconds after entering. There's a video of everything that took place in the nine minutes that transpired from the time he entered to the time that he was pepper sprayed, punched, kicked, and thrown to the ground and handcuffed. He had authority from the moment he entered and showed his card to the time that he ultimately was handcuffed and taken out. He was never a trespasser and he was never there without authority. Secondly, the facts show absolutely and as admitted by the defendant, Mr. Jacobsen was unarmed. He was not at any time until after he was thrown to the ground, placed under arrest, he was not resisting arrest, he was not non-compliant with any order that the officer was entitled to give under the Odessa rules or the Cass County Sheriff's manual. He was not, he was not in any way anything other than what this court has called in many occasions before a potential non-violent, unarmed, potential misdemeanant. He was not fleeing, he was not arresting, and according to the officer himself, Mr. Jacobsen did not threaten the officer or any person close by or at any time in the premises of the auto auction. Go ahead, Judge Callender. Thank you. Is there a dispute about whether your client actually shoved or touched the officer in any way? Well, there is no dispute about the fact that Mr. Jacobsen did not touch, attempt to touch, shove, or in any way use any aggressive action against the officer until after the officer had pepper sprayed him in the face and had lunged forward with an attempt to place the can directly against his eye to spray him directly in the eye. At that point... I thought there was, if I can just interrupt, like I thought there was something at least in either undisputed or maybe in dispute that that your client had somehow kind of pushed him away because of an injury saying, oh, you know, I'm tender, don't touch me. You're saying that it's undisputed that nothing happened prior to the pepper spray? Yes, Your Honor, I'm saying that not only did Mr. Jacobsen testify to this, as did a witness who provided an affidavit, but there's a video that shows this. What happened there, what you're talking about, where this, we believe that this came from, is that when Mr. Jacobsen went, tried to go into an area of the premises, which was referred to in some of the testimony as a restricted area. At that point, the officer came up behind Mr. Jacobsen, grabbed him by the arm, and tried to spin Mr. Jacobsen around. Mr. Jacobsen pulled away from the officer. He didn't shove the officer, hit the officer, or swing at the officer. He simply pulled away. The officer then immediately got behind Mr. Jacobsen, shoved him down this slight ramp, shoved him down to the bottom of the ramp about three or four times, as you can see on the video. At that point, Mr. Jacobsen was out of the restricted area. Mr. Jacobsen was standing, leaning against a counter in an area he had every right to be, and he stood there for, under the video, a period of a couple of minutes while the officer is shown yelling at him, gesturing at him, telling him, according to Mr. Jacobsen, another witness, telling him he had to leave the premises. When he didn't leave the premises, then, as the officer began to reach for something, which is shown in the video, Mr. Jacobsen actually stepped back to get away from the officer, at which time the officer lunged forward with his arm, striking Mr. Jacobsen in the chest, pushing him back against the wall. Mr. Jacobsen could not retreat further, at which point the causing Mr. Jacobsen to be blinded and having difficulty breathing, but the officer didn't think that the spray had hit him in the eye. So the officer then lunged forward, even though he had backup on the way and there was a security guard on the premises, the officer then lunged forward, and this again is coming from the officer, and put the can directly against Mr. Jacobsen's face, trying to spray him in the eye. At that point, Mr. Jacobsen reached up defensively and when the officer pulled his hand away, Jacobsen's now holding the can, but the eyewitness said, as did Mr. Jacobsen, Jacobsen couldn't even see the officer at that point because he was blinded. He did nothing with the can, at which time the officer then struck Mr. Jacobsen on the side of the head four times, then lunged in, grabbed him, knee kicked him about two or three times, and then he and the officer who had been called as backup, threw Mr. Jacobsen down to the ground. That's what happened. Counselor, I'm sorry, but long before all of the things, most of the things you talked about in that recitation, I think there was something to which the district court alluded, and I think it's important, and it may have been what Judge Kelly had in mind, but the district court said, after Jacobsen's efforts to locate a manager failed, Kleinfelter attempted to make Jacobsen did not leave. Instead, when Kleinfelter attempted to remove him, Jacobsen, quote, shoved Kleinfelter off, unquote. Is that right? Is that true or not? No, it's not true. That's what I'm telling you, your honor, and I apologize. All right, well, I want to make sure that we're taught we're on the same page. We are on the same page, and that is the incident that occurred at the top of the ramp where Mr. Jacobsen pulled his arm away, but part of the problem here, and of course this court is well aware, is that you review the case de novo, and you make your own determination of what the facts are, and you view these questions of excessive force from the perspective and in the light most favorable to the appellant, and what I would say then is that moving in response to your question moving forward is that the best way to analyze this case under the controlling principles of law is to compare the facts in this case with facts in other cases, the six other cases this court has decided since 2009. Well, before we get into other cases, let's talk about this case a little bit more if we could. I hear you saying it's undisputed that the officer directed Jacobsen to leave. Is that true? Yes. And is it true that Jacobsen refused to leave because he thought he wasn't required to leave? That is true. And is there any basis under the law for him to refuse a command from the officer, or does the refusal of a command give the officer authority to use at least some amount of force to carry out his order? I'll answer both questions in the sequence they were asked. The first question is did the officer have any authority to give the command, and the answer is absolutely and the reason he didn't is because this is a private auto auction. The officer, according to the Cass County manual... Well, let's assume that for the sake of discussion. Okay. The officer ordered him to leave. Yes. Under the law, does your client have any right to resist the order, whether it was rules to stay on the premises unless and until he was told to leave the premises by a manager or supervisor or unless a manager or supervisor told the officer to remove him from the premises. Even if, however, the officer had authority to demand that he leave, we go back to the many cases this court has decided in which someone, the person who is subjected to force is noncompliant or resistant. For example, people are actually under arrest or are being arrested or are told by an officer to step back or step away, such as in the Carroll case, Brown versus City of Golden, the Sheckland case, the Bernickel case. In all of those cases, the officer claimed the person was noncompliant, and this court said that even in cases where somebody is noncompliant, the use of force is least justified, if ever justified, against someone who is an unarmed, nonviolent misdemeanant who is not threatening the officer or anybody else, who is not attempting to flee or is not resisting arrest. I can see, Your Honor, that I am at, I think, 19 seconds before I go into my rebuttal time, and for that reason, I'll save the remainder for rebuttal unless the court decides otherwise. Well, I have some questions, but why don't we save them for rebuttal, and we'll hear from Mr. Feinberg. Whatever the court's preference is, Your Honor. Well, I think you should address the Tatum case at some point, because it's featured in the Appley's brief. It holds there's qualified immunity for using pepper spray in the face against a nonviolent misdemeanant. Why isn't that a pretty solid authority in support of the district court's ruling? Your Honor, I would say it's not, because the Tatum case has kind of some very unusual circumstances in that we have someone who is already under arrest and is being extremely noncompliant and resistive, and the force was used after the person who's under arrest has essentially shown physical resistance, and the officer sprayed in the face and then used some kind of a chokehold. The court ultimately determined that the use of the pepper spray could justify, could be called excessive force. The reason that case ultimately was determined in terms of qualified immunity is because the court said there are two prongs. One is the force used has to be a clear violation of right, and secondly, it has to also be excessive. In the Tatum case, the court said the use of the pepper spray could well be excessive, but under the circumstances of someone who's under arrest and who has been resistive, despite being warned repeatedly by the officer, they could not say that the officer's use of force under those circumstances was a clear violation of the right. I know what you said, but why isn't that just like this case? Your man was told he had to leave, he refused, and so the officer used some pepper spray to try to corral him and get him to leave. Because the reason, there are Mr. Jacobson was not only not under arrest, but he also, the officer had no authority, and the officer well knew this, under the Kask County Manual and the Odessa rules, the officer had no authority to demand that Mr. Jacobson leave. Even if he had the authority to demand that Mr. Jacobson leave, the use of pepper spray against a non-violent person who was doing nothing but spilling against the counter when there was backup on the way and a security officer there would be excessive and objectively unreasonable force in light of those circumstances. Under this court's precedence in the six or seven cases that we've cited in our brief. Okay, thank you for addressing that case. I appreciate it. Thank you, your honor. If I might ask a question. It's a simple question. Are you asserting only an excessive force case or also a wrongful arrest or malicious prosecution case? No, your honor, thank you for asking that question. I'll clarify. We are only making this case under excessive force in violation of section 1983 and then a battery case under the common law of Missouri. Okay, thank you very much. Yes, your honor. All right, you may reserve the balance of your time for rebuttal and Mr. Heigl will hear now from you. Thank you, may it please this honorable court. Simply put, Deputy Mike Kleinfelter simply did his job to serve and protect the property and the people at Adisa auto auction on the day in question. With all due respect, we can dispense with the argument Mr. Merakian has made quite vociferously that Mr. Jacobson was just a peaceful non-violent misdemeanant. He admitted he fought with Deputy Kleinfelter. He admitted he resisted arrest. He admitted when he pled guilty to a plea bargain charge of disturbing the peace. He wasn't arrested for violating Adisa rules. He was arrested for violating the laws of the state of Missouri. He was arrested for assault on a police officer. He was arrested for resisting arrest. He was also arrested for trespass. Now the whole issue of trespass, Deputy Kleinfelter was working as a Cass County deputy sheriff on the day in question. He was told by Adisa that he is to keep unruly people out. He was told by Adisa that he needed to make sure everybody showed an identification badge, which Jacobson did not do. Mr. Merakian is incorrect in that statement. If he did, all Jacobson had to do was go to the kiosk at the front door, slip his badge. Jacobson didn't do that. No, he told the unarmed security guard at the front who checked everybody in, so to speak. He cursed at her and told her to F off. Then when Mr. Kleinfelter or Deputy Kleinfelter saw that interaction, told him, stopped him, said you need to leave. He did not do so or he didn't show his ID. He cursed at Deputy Kleinfelter as well. Mr. or Deputy Kleinfelter tried to deescalate the situation and let Mr. Kleinfelter talk to the manager to explain his case. It's all on video as well. It is all on video as well. They walk to and fro trying to find a manager at Adisa. They can't find one. Deputy Kleinfelter was specifically instructed by Adisa not to allow people to get into the quote-unquote restricted area at the top of the ramp. As soon as Mr. Jacobson started going up ramp, Mr. or Deputy Jacobson stopped him and guided him down the ramp. What is also on the record, and these are uncontroverted, and the district court viewed all of these facts in a light most favorable to Mr. Jacobson and still ruled in favor of Deputy Kleinfelter on a lack of a constitutional violation, no wrongful arrest, and there was probable cause. I'm sorry I'm jumping around, but probable cause was established three ways. One, he pled guilty. That establishes as a matter of law probable cause for the arrest. Two, the state judge found probable cause when he issued the arrest warrant on the three non-misdemeanor charges that he was arrested for. And four, the facts and circumstances of the case from Mr. or from Deputy Kleinfelter's perspective shows as a matter of law in spades that probable cause exists for this arrest to remove him from the premises for trespassing. Let's go over the uncontroverted facts that were viewed in a light most favorable to Jacobson by the district court. He didn't show a proper ID when he arrived and was told so by the first security guard at the door. Jacobson never obtained the proper ID to participate in the auction by going to the kiosk showing his whatever ID Mr. Merakian indicates that he had and showed immediately. He didn't do that. He didn't get his bidder badge. All he had to do was do that case over. He didn't have the right identification. That's what's lost or not not lost. That's what if he would have had it, we wouldn't be here. Jacobson refused the instructions to get his badge, show his ID or leave. You can see on the video Mr. Deputy Kleinfelter is gesturing towards the door for him to leave if he's not going to follow directions. Jacobson didn't do so. Jacobson demanded to see a manager to explain his case. Deputy Kleinfelter de-escalated the situation, allowed him to do so. When that didn't happen, Jacobson went up the steps or up the ramp to the non-to the restricted area. That's when Mr. Kleinfelter, Deputy Kleinfelter stopped him. That's what the facts are. I thought that Mr. Kleinfelter or Mr. Smith testified that he did show an ID. No, he did not. It was not apparent to Deputy Kleinfelter that Jacobson. That's a question of fact. They said they did. They said that he did show the ID and so it's in dispute whether he did or not, right? That wasn't a part of the court's analysis for probable cause to arrest for trespass, not leaving when told. I don't understand what that means. You said that he did show it and what I'm saying is that that's disputed. That is one fact in dispute, but it's not responsible of the motion for summary judgment. I'm sorry. And then you should argue it based on assuming that he did show the ID and explain why there were still grounds for what happened. Because Deputy Kleinfelter is authorized by ADISA to make sure that people that are only authorized to be there are there and then when Mr. Jacobson went up into the restricted area, Deputy Kleinfelter stopped it and told him to leave, put him down. They went down to the bottom of the ramp. Deputy Kleinfelter, it's all on tape. He warns them and it's admitted. He warns them, if you don't leave, I'm going to have to use pepper spray and he didn't leave. He used or he took the pepper spray out. It malfunctioned, it out onto his face. Then Mr. Jacobson fought, admittedly fought with Deputy Kleinfelter, grabbed, and this is witnessed by five people other than the two combatants, so to speak, grabs the pepper spray, tries to use it back on Deputy Kleinfelter, fights with Deputy Kleinfelter, pins Deputy Kleinfelter up against the wall, requiring him and another deputy to finally control Mr. Jacobson and put him on the ground and then goes and as soon as he is under control, his eyes are immediately flushed out. He's arrested or he's already under arrest. He's and he pleads guilty down the road to the lesser charge of disturbing the peace through a plea bargain, through an Alfred plea to a plea bargain. So probable cause for the crimes for whatever arrest happened was established as a matter of law. Is that important in the analysis? Because there's no claim, we've just been told, of unlawful arrest, only excessive force. So if Kleinfelter ordered him to leave and didn't have grounds to order him to leave, was Kleinfelter still justified in using force if Jacobson refused his command or do we have to go back and analyze whether he had grounds to order him to leave in the first place? He can use that reasonable force that is necessary to affect the arrest or stop the resistance and that's what he did. Does that depend on whether it was a proper arrest or not is my question? It was a proper arrest. I'm trying to avoid the question is what I see here. Okay. Maybe I'm not being clear. Suppose an officer tells someone to leave mistakenly. He has qualified immunity. And doesn't have authority to order him to leave. Can the citizen resist the order on the grounds that it's wrong? And if so, does the officer have authority to use force then? Yes, and the citizen does not have a right to resist even an unlawful arrest in Missouri. That's what your brief said. It is exactly what my brief said. Very confident because you keep arguing that the arrest was law as though that's the key to the case. It's twofold. The arrest is lawful. The force used was reasonable. But if Deputy Klinefelter was somehow mistaken in the arrest, that arrest is objectively reasonable and he's entitled to qualified immunity and that's exactly what Judge Lowry found. She said, hey, I couldn't find a, based on the facts most favorable to Jacobson, I couldn't find a constitutional violation. But oh, as a fallback, if Deputy Klinefelter was somehow mistaken, he's entitled to qualified immunity in summary judgment issues anyway. Okay. And so I'm troubled. I'm troubled. I'm not troubled. I'm concerned about your statements about the appropriateness of the arrest. And if the arrest is appropriate, which I don't think now is in dispute, if the arrest is appropriate, then you can use objectively reasonable force to affect that arrest. Well, I thought it was in dispute because the disorderly conduct allegedly occurred after the force was employed and the plaintiff is saying he showed the ID at the front and you admitted earlier that that's a disputed fact. So it's possible that there was no basis to order him to leave. And that's why I've been questioning you about that because I thought your argument was even if it was a wrong order, if the guy resists, the officer can still use reasonable force to carry out his order even if the order was flawed. But that's exactly right. So that's, and I apologize if I was inartful in that argument, but that is what was argued and as established in the briefing. I think the better argument, well, my primary argument is that there was no problem with the arrest itself. There was no, there was none. But if there is a problem with the arrest, it's objective, the mistake or whatever is objectively reasonable and the officer, Deputy Klinefelter, can use that force which is necessary to affect the arrest and stop the resistance. Well, now you're making it depend on whether the command was objectively reasonable. I thought your position in the brief was even if it's an unlawful order, reasonable or not, the citizen has to comply. No, it's the force that's, it's the force that's reasonable. I'm talking, Judge, not the actual order. There is no, what you mean when you say it was a mistake and use of force that I thought all the talk about mistake had to do with the arrest. I'm not familiar with the concept of mistake and use of force. No, that's not, and I apologize, I don't mean to make that argument, Judge. If the arrest is lawful, summary of judgment should issue. If the arrest is for some reason wrongful and you have no right to resist even an unlawful arrest in the state of Missouri. So, therefore, the force used in overcoming said resistance is appropriate. And the use of pepper spray, one-time use after a warning is objectively reasonable. The use of handcuffs is objectively reasonable. And one of the most recent, Mr. Merathian doesn't mention most recent Eighth Circuit announcements on use of force and qualified immunity and righteousness of arrest, the Fisher v. Hogan case of an armbar in order to affect the arrest is objectively reasonable. So, all of the force used was objectively reasonable regardless of how the court considers the appropriateness of the arrest. Either way, summary judgment is appropriate. So, I only have 15 seconds. Is there any other questions for you, Judge? Or Judge Arnold or Judge Kelly? Okay. I would respectfully request that the full depth and breadth of my brief be incorporated herein and that those arguments be used to guide the court in its ruling. Thank you. Very well. Thank you for your argument. Mr. Merathian, from you and rebuttal. Yes, thank you, Your Honor. Very quickly, I want to address this issue of probable cause to arrest. This is not a wrongful arrest case. And that's why Mr. Heigl's argument is flawed. And I will tell you, I'll simply say to the court, you can look at your own precedents, including the Smith v. Kansas City case, Brown v. the City of Golden, and numerous other cases in which the court has said, even if there's probable cause to arrest, that doesn't end the discussion. Even if there's probable cause to arrest, you must look to see whether or not the force used is objectively reasonable and was not excessive. A prime example, in Smith v. Kansas City, the gentleman was arrested. They had a warrant. They arrested him. As they're taking him out of the house, he struggled with the officer. They threw him against a rail. He fell down a couple of feet onto the concrete. And the court came back and said, no qualified immunity. Because even though the arrest was lawful, the force used was objectively unreasonable or could be objectively unreasonable, and the force could be excessive. In Brown v. the City of Golden, this idea that everyone has an obligation to comply, and if you don't comply, the officer can do whatever the officer wants, has never been accepted by this court. Brown v. the City of Golden and Sheckleton and Bernicle v. Fong are prime cases. In Brown v. the City of Golden, the officer had every right to tell the woman, put down your cell phone. What he didn't have the right to do, when she didn't put down her cell phone, he didn't have the right to hit her with a taser and drag her from the car by her hair. In Bernicle, the officer had every right to tell the gentleman, step back, I'm trying to arrest this woman. And when the man didn't do that, the officer did not have any right to then pepper spray him, punch him in the stomach, and throw him to the ground. In this case, we're talking about the same, Sheckleton, the same thing. The officer had every right to tell the person to step back and to stop arguing and stop cussing at him. What the officer didn't have the right to do was to then pull out his pepper spray or taser and tase the gentleman. What this court has said is whether or not a single shot with pepper spray is excessive force is a question of fact. It's a disputed issue. That's in the Bernicle case. In this case, what we're saying is you look at the precedent from Brown, from Carroll, from Sheckleton, and Bernicle, all cases in which there was no arrest at all, and you say under these circumstances, was the use of pepper spray followed by an attempt to spray in the eye, followed by punches to the head, followed by knee kicks, followed by was that objectively reasonable and appropriate force against a nonviolent, unarmed, suspected misdemeanant who was not under arrest, was not fleeing, and was not threatening anybody. That's what this case is about. Thank you, Your Honor. All right. Thank you, both counsel, for your arguments. The case is submitted, and the court will file an opinion in due course.